UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                           :

JESSICA BERK and RUTH NAN BERK,      :

                       Plaintiffs,      :

                                   :       00 Civ. 8483 (GEL)

         -against-      :

                                   :       **OPINION AND ORDER**

THE CITY OF NEW YORK, et al.,      :

                     Defendants.      :
------------------------------------------------------------------x

GERARD E. LYNCH, District Judge:

      Plaintiffs brought this action on November 6, 2000, charging a number of police officers, as well as two civilians who were neighbors of the plaintiffs, with various civil rights violations, as well as with various torts under New York State law. After defendants answered the complaint in February 2001, this Court referred the case for general pre-trial supervision to the Honorable Ronald L. Ellis, United States Magistrate Judge. In May 2003, plaintiffs settled with the police defendants, leaving the case pending only against the two civilian defendants. One of the civilian defendants, Gerard Andrew Ruth, then moved for summary judgment in his favor, and his motion was granted by Order dated September 15, 2004. The remaining civilian defendant, Scott Smith, did not join Ruth's motion for summary judgment, and the Court's September 15, 2004, Order specifically directed that the case would remain referred to Judge Ellis, to clarify the status of plaintiffs' claims against Smith.

      After issuing the September 15, 2004, Order, the Court received a letter from Smith, dated September 6, 2004, requesting that "all of the findings outlined by Judge Ellis be applied to my involvement in this case and that this action be dismissed as it relates to me as well." The

Court treated Smith's letter as a motion for summary judgment, and referred the motion to Judge Ellis for further briefing, submissions, conferences, or any other proceedings Judge Ellis deemed necessary. Following a series of valiant attempts to obtain briefing and supporting documentation on the motion from both plaintiffs and Smith, on January 4, 2006, Judge Ellis submitted a Report and Recommendation ("R&R") recommending that plaintiffs' action against Smith be dismissed for failure to prosecute, and requiring that any objections to the R&R be filed with this Court within ten days of service of the R&R, pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72. Plaintiff Jessica Berk filed an objection to the R&R on January 24, 2006.

**BACKGROUND**

This is an acrimonious dispute between pro se litigants. Such disputes are often accompanied by a host of problems, due to the parties' animosity toward each other, their lack of knowledge of court procedure, and the absence of the often-useful buffer of counsel to soften the effects of personal emotion. The confluence of these factors frequently impedes the process of efficient dispute resolution, and that has happened here.

Plaintiffs' complaint, brought under 42 U.S.C. §§ 1983, 1985, 1986, and various state laws, alleges that the police defendants conspired with Smith and Ruth to harass plaintiffs and to allow Smith and Ruth to evade punishment for assorted illegal activities that harmed plaintiffs. Specifically, plaintiffs allege that Smith, while living in an apartment above plaintiffs' during the mid and late 1990s, vomited and urinated on their balcony, threw objects such as bricks, bottles, needles, condoms, and marijuana cigarettes onto their balcony, sold drugs, engaged in "sadomasochistic sex and homosexual sexual activity" (Compl. ¶ 34), and illegally barbequed. Plaintiffs complained to the police about this behavior on numerous occasions, but in response to

these complaints, plaintiffs allege that the police, along with Smith and Ruth, engaged in a protracted campaign of harassment, threats, and assaults, including several allegedly illegal arrests of plaintiff Jessica Berk.

After plaintiffs settled with the police defendants, this dispute was for all intents and purposes a dispute between neighbors, and not a federal case. Judge Ellis, through great effort, managed the case toward an eventual summary judgment motion, which was granted in an order adopting a previous R&R by Judge Ellis. However, because defendant Smith did not join the motion, the grant of summary judgment in favor of Ruth was not applied to the claims against Smith, even though it appeared at the time that the reasons underlying the judgment in favor of Ruth might well apply in favor of Smith as well. Therefore, when the Court referred Smith's September 6, 2004, letter to Judge Ellis for resolution as a motion for summary judgment, the path toward resolution of this dispute, either by summary judgment for Smith or by trial of the claims against him, seemed relatively smooth.

At that point, however, the litigation took a bumpy turn. Judge Ellis needed to contact Smith to proceed with briefing and to decide Smith's motion for summary judgment. However, Smith had, by that point, moved across the country to Washington State without providing the Court with updated contact information, and Judge Ellis was therefore initially unable to set a briefing schedule. Having heard nothing from Smith, on March 17, 2005, Judge Ellis ordered Smith to submit a memorandum in support of his motion for summary judgment by April 18, 2005, ordered plaintiffs to respond to Smith's submission by May 18, 2005, and instructed both parties that failure to meet these deadlines could result in judgment against the defaulting party.

The next docket entry following Judge Ellis's March 17, 2005, Order is an Order dated August 29, 2005, wherein Judge Ellis ordered Smith to contact the Court by September 15, 2005, or risk judgment being entered against him. Then, on September 12, 2005, Judge Ellis ordered plaintiffs to file a response to Smith's memorandum by September 30, 2005. At the time, the record was unclear regarding what memorandum, if any, Smith had filed, or how, if at all, Smith had complied with Judge Ellis's order demanding that Smith contact the Court by September 15.

It now appears, however, that on April 4, 2005, Smith had mailed a memorandum to Judge Ellis's chambers in response to the March 17, 2005, Order. This memorandum was never docketed, and neither the record nor the memorandum itself indicates that it was ever served on plaintiffs. In any event, the self-declared memorandum was only one page, most of which concerned ancillary matters, and simply stated that "I have requested that this case be dismissed based upon exactly the same set of circumstances that Ruth requested and received his dismissal." Smith's submission contained no sworn affidavits or documentary evidence of any kind. At the time of Judge Ellis's September 12 Order, there is no indication that plaintiffs had received Smith's memorandum.

At some point in September 2005, plaintiffs attempted to file a response to Judge Ellis's August 29, 2005, Order. However, plaintiffs' attempted filings were rejected by the Court's Pro Se Office for failure to serve Smith. The reason for this failure was Smith's desire, based on a fear of harassment, to withhold his address from plaintiffs. Smith's April 4 letter explicitly requested that his then-current address not be revealed to plaintiffs, based on his belief that plaintiffs were to blame for his receipt of numerous unsolicited junk mailings and harassing anonymous notes at his former residence. Without Smith's address, plaintiffs could not serve

4

him, and without proof of service plaintiffs' filings were not accepted by the Court's Pro Se Office. At the end of September, after several telephone communications between this Court, Judge Ellis, and plaintiffs, plaintiffs were provided with a last known address for Smith for purposes of service, even though at the time it appeared that Smith no longer lived at that address and no updated address was available. It is unclear if this compromise solution was ever communicated to the Court's Pro Se Office.

In any event, on October 3, 2005, plaintiffs' response to Smith's memorandum was received by the Court's Pro Se Office. However, that response was also rejected for "improper form." After the rejection, plaintiffs' response could not be located, so the exact nature of the alleged impropriety cannot now be determined, and the correctness of the rejection cannot be assessed. As a result of the rejection and subsequent disappearance of plaintiffs' filing, Judge Ellis ordered plaintiffs to re-file their response by November 18, 2005. Attached to that Order was a copy of Smith's April 4 one-page letter/memorandum to the Court. So far as the record reveals, this was the first time plaintiffs were provided with Smith's memorandum.

Plaintiffs did not respond by November 18, 2005, save for an empty envelope that arrived in Judge Ellis's chambers on November 21, and so Judge Ellis again ordered plaintiffs to respond, this time by December 1, 2005, and informed plaintiffs that failure to respond could result in judgment being entered against them. At the same time, having recently obtained a current address for Smith, Judge Ellis ordered a modified service arrangement whereby both Smith and plaintiffs would "serve" documents on the Court's Pro Se Office, which would keep addresses for both parties, and the Pro Se Office would then forward all filings to the appropriate party. This arrangement, unlike the September "last known address" solution, was ordered and

docketed.

Despite this new service arrangement, December 1 came and went with no response from plaintiffs. Therefore, on December 9, 2005, Judge Ellis ordered plaintiffs to show cause by December 23, 2005, why judgment should not be entered against them for failure to adhere to the December 1 deadline. Once again, plaintiffs did not respond, and on January 4, 2006, Judge Ellis recommended dismissing their complaint for failure to prosecute.

## DISCUSSION

"It is well established that a district court has the power to dismiss an action for failure to prosecute." Nita v. Conn. Dep't of Envtl. Prot., 16 F.3d 482, 485 (2d Cir. 1994). The exercise of that discretion, however, is guided by five factors:

> [1] the duration of the plaintiff's failures,
> [2] whether plaintiff had received notice that further delays would result in dismissal,
> [3] whether the defendant is likely to be prejudiced by further delay,
> [4] . . . the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard, and
> [5] . . . the efficiency of lesser sanctions.

Id., quoting Alvarez v. Simmons Market Research Bureau, Inc., 839 F.2d 930, 932 (2d Cir. 1988) (brackets in original). On the current record before the Court, the balance of these factors weighs against dismissing plaintiffs' complaint for failure to prosecute.

(1) As to the first factor, plaintiffs' failures span a short period of time when compared to the overall life span of this case. Plaintiffs filed the instant action in November 2000, and vigorously pursued it until they began to miss deadlines, five years later, in November 2005. During the period from September 2004 to November 2005, plaintiffs repeatedly contacted

6

chambers to inquire as to the status of the case and whether any action on their part was necessary. During one phone call, in January 2005, plaintiffs explicitly informed the Court that they continued to contact chambers because they did not want to be accused of failing to prosecute the case, even though, as stated above, plaintiffs were not told to take any action until September 12, 2005, when they were ordered to respond to Smith's memorandum by September 30. Plaintiffs' one-and-a-half month dereliction is small beer when viewed in the overall context of this litigation.

(2) The second factor weighs in favor of dismissing plaintiffs' claims. Judge Ellis's orders time and time again warned plaintiffs that failure to comply with deadlines could result in an adverse judgment. There is no doubt that plaintiffs were on notice that non-compliance could result in the dismissal of their claims. It should be noted, in fairness, that Judge Ellis had also warned Smith in both the March 17 Order and the August 29 Order that failure to meet deadlines could result in an adverse judgment against him, and, while Judge Ellis did receive a document from Smith that was responsive to at least one of those Orders, that document was never filed, docketed, or served on plaintiffs. Thus the record, as reasonably understood by plaintiffs, appeared to show that Smith had violated a similar scheduling order without receiving any sanction. Such a perception on the part of plaintiffs, however, cannot excuse failure to comply with court orders. Moreover, even if plaintiffs were at some point under the false impression that their claims would not be dismissed because Smith had not been sanctioned for what they believed was a similar violation, there can be no doubt that they were fully on notice after receiving Judge Ellis's order to show cause on December 9.

(3) The third factor, prejudice to defendant, weighs strongly against dismissing plaintiffs' claims. Smith does not assert that he was prejudiced by plaintiffs' failure to respond to his April 4 letter by the November 18, 2005, deadline, and the record does not indicate that any prejudice resulted. Moreover, Smith himself contributed to the confused record by failing to comply with rules of court. Since the Court's prior grant of summary judgment in favor of Ruth, Smith has apparently sent two letters to the Court – his September 2004 letter and his April 2005 letter; neither letter was properly served or docketed. Additionally, Smith has failed to notify the Court of changes of address, a failure which at times made it impossible for plaintiffs to serve a response or file documents. In fact, for at least the past two years it appears that Smith has not formally filed anything in connection with this litigation. Smith's failure to comply with proper procedure has caused as much, if not more, delay in this litigation as have plaintiffs' transgressions.[1]

---

[1] The contrasting approaches to court procedure on the part of the pro se parties illustrates a common difficulty with such cases. By sending letters directly to Judge Ellis, Smith effectively evaded the Pro Se Office's enforcement of procedural requirements. Once Judge Ellis was in receipt of Smith's letters, he appropriately read them and interpreted them in the generous manner due all pro se submissions. It is common in this district for attorneys to raise issues with the Court informally by letter, with proper copies to all parties, in lieu of formal motion practice, and pro se litigants, unfamiliar with the more formal procedures, often adopt an epistolary approach. However, Smith's apparent failure to follow proper procedure by sending copies to plaintiffs (and Judge Ellis's apparent failure to notice this error and correct it by seeing to it that copies were forwarded to plaintiffs) resulted in disconnect and delay. Plaintiffs, on the other hand, unfamiliar with the *in*formal procedure and attempting to follow the rules of court more scrupulously, took the more formal route of submitting their papers to the Court via the Pro Se Office. Their submissions, however, were not afforded the benefits of Judge Ellis's liberal reading, because Judge Ellis never had the opportunity to *see* submissions rejected by the Court's Pro Se Office. Thus, ironically and unintentionally, the result of plaintiffs' efforts to comply with proper procedure was unequal treatment. This is simply another example of the myriad of problems presented by cases involving pro se litigants.

(4) The balance between alleviating case congestion and protecting plaintiffs' due process rights also weighs against dismissing plaintiffs' claims. While this litigation has indeed dragged on for years, that dragging has not been due to delay on the part of plaintiffs. If anything, this case has been pending for so long because plaintiffs have *over*-prosecuted it. Smith's pending summary judgment motion, if it is ever fully briefed, will likely share many relevant issues with the Court's previous summary judgment opinion in this matter, and therefore the Court will be familiar with the applicable law and some of the pertinent facts. When the motion is properly submitted, the Court anticipates it will be possible to resolve this dispute on the merits, rather than on an ancillary procedural technicality, with little added burden on the Court's calendar.

(5) As for the efficacy of lesser sanctions, it is unclear that sanctions are appropriate at all in this matter. The emotional level of the dispute is indeed high. Plaintiffs are upset with the alleged behavior of their neighbors, and understandably resent alleged false arrests by the authorities. They have also complained of the slow pace of the litigation, and have unjustly accused Judge Ellis and his law clerks of bias for their patient efforts to bring the summary judgment stage of the case to a head. Smith, for his part, is frustrated by what he regards as harassment by plaintiffs, and is surely frustrated by the need to respond to a lawsuit pending a continent away, based on events in the distant past, that he apparently regards as frivolous.

Indeed, it may not be in anyone's interest to continue with this lawsuit. While the root of this matter was an ongoing dispute between neighbors, it was only the involvement of the police that made it a federal action. Both sets of neighbors invoked the police to intervene in their ongoing dispute, and if the police in responding to these complaints violated plaintiffs' rights,

9

plaintiffs face a difficult road in demonstrating that Smith is to blame for their actions. Plaintiffs long ago settled their claims against the police defendants and the City of New York, and their claims against the civilian defendant Ruth were dismissed on summary judgment. The only remaining individual defendant, Smith, now lives three thousand miles away from plaintiffs and, given his pro se status, is unlikely to have significant resources from which plaintiffs might recover damages. Plaintiffs have recovered from the city; Smith is no longer their neighbor. Perhaps, instead of investing the resources necessary to oppose a summary judgment motion and then, if successful, to prosecute the case at trial, or to seek to enforce a default judgment if Smith fails to appear for trial, it would be in plaintiffs' interests to deem this litigation a success, and go on about enjoying their apartment. No Federal Rule of Civil Procedure requires parties to continue with litigation until every claim has either been satisfied with a judgment or dismissed by the Court.

But that is a choice for plaintiffs to make. They have a right to proceed with the litigation if they choose to do so, and they have not abandoned their claims or failed to prosecute them. To the extent that both parties, plaintiffs and Smith, have failed to comply with the Court's scheduling orders, the Court concludes dismissal is inappropriate at this time, and that it is preferable to clean the slate and give both parties one final opportunity to comply with scheduling orders and resolve this dispute on the merits, if they so desire. Thanks to Judge Ellis's novel and effective service order, both parties are now able to properly file and serve documents related to the pending summary judgment motion.

At the same time, both parties must make efforts to properly present their cases to the Court. In the face of clear instructions to both sides as to how to proceed, there will be no

10

excuse for further derelictions. Both sides are warned that this is the last opportunity to make appropriate submissions in the case.

The ball is initially in Smith's court. Unless plaintiffs voluntarily dismiss their action, they are entitled to proceed to trial in the absence of a grant of summary judgment. Smith is advised that a document similar to his April 4, 2005, memorandum is not a sufficient basis for summary judgment. To support a motion for summary judgment, Smith cannot merely ask the Court to apply to him the judgment in favor of Ruth, based on the facts that were asserted by Ruth. Rather, Smith must assert facts that *relate to him*, in the form of sworn affidavits or other documentary evidence. Ruth's motion for summary judgment was granted because plaintiffs had not produced sufficient evidence showing that Ruth acted under color of law or conspired with the police. If Smith wants to file a similar motion under similar grounds, he must provide some evidence, at a minimum his own affidavit, that *he* did not act under color of law or conspire with the police to have plaintiffs illegally arrested. Moreover, any papers he seeks to file must be properly served and filed by presentation to the Court's Pro Se Office for transmission to plaintiffs. If he cannot or does not timely support his motion in this way, the motion will be denied or deemed withdrawn and the case will be set for trial. If the motion is properly supported, plaintiffs will be required to respond to it. The motion will not be referred for the time-consuming process of a report and recommendation, but will be promptly decided by this Court.

Similarly, plaintiffs' discontent with their initial inability to serve Smith and the subsequent loss of their response submission is understandable, but plaintiffs' apparent refusal to make a submission in response to Judge Ellis's Order risked dismissal of this lawsuit. Further

blank submissions will not be tolerated. Plaintiffs are advised, moreover, that their response to Smith's submissions must present more than allegations and speculation. To successfully oppose a summary judgment motion, plaintiffs must provide *evidence*, not merely accusations, that Smith did not simply report complaints to the police, or even make false reports, but that he *conspired* with the police or otherwise acted under color of state law. If no such evidence exists, summary judgment will be granted on plaintiffs' federal claims, and their state law claims will be dismissed for lack of jurisdiction.[2]

Accordingly, it is hereby ORDERED that:

1. The R&R will not be adopted as the opinion of the Court.

2. Smith shall submit a memorandum and other materials in support of his motion for summary judgment by April 17, 2006. Any facts he wishes to assert as bases for summary judgment must be submitted in the form of sworn affidavits or other admissible evidence as required by Fed. R. Civ. P. 56(e).

3. Plaintiffs shall submit their response to Smith's submission by May 15, 2006. Any issue of fact they wish to raise in opposition to the motion for summary judgment must be supported by affidavits or by other documentary evidence contradicting the facts asserted by Smith, as required by Fed. R. Civ. P. 56(e).

4. Smith shall submit his reply, if he chooses to make one, by May 29, 2006.

---

[2] The Court has been advised that plaintiffs' initial response – which was received on October 3, 2006, rejected, and then subsequently misplaced – contained documents and materials that plaintiffs claim are irreplaceable. While plaintiffs cannot be faulted for the misplacement of their initial filing, it is of course prudent to make copies of any documents submitted to the Court. The deadline for plaintiffs' response is two months away, and in that time the plaintiffs should be able to recreate or replace, to the extent possible, the evidence that was attached to their previous response.

5. Filing and service of all documents, including the aforementioned summary judgment documents, shall be done through the Court's Pro Se Office, 500 Pearl Street, Room 230, New York New York 10007, telephone number (212) 805-0175, pursuant to Judge Ellis's Order of November 21, 2005. *Letters to chambers will not be accepted.*

6. Failure to comply with the terms of this Order will result in the following sanctions:

   - *If Smith fails to comply with this Order his summary judgment motion will be deemed withdrawn and the case will be scheduled for trial.*

   - *If plaintiffs fail to comply with this Order their complaint will be dismissed for failure to prosecute.*

7. No extension of the deadlines in this Order will be granted for any reason.

SO ORDERED.

Dated: New York, New York
March 14, 2006

_____
GERARD E. LYNCH
United States District Judge